CHARLES F. KEIGER AND MAMILEE ENTERPRISES, INC. v. THE WINSTON-SALEM BOARD OF ADJUSTMENT; J. A. HANCOCK, ROY SETZER, C. C. SMITHDEAL, JR., JOHN MANNING, WILLIAM F. THOMAS, SAM OGBURN AND MRS. MARTHA CATES; AND THE WINSTON - SALEM - FORSYTH COUNTY PLANNING BOARD; F. GAITHER JENKINS, ZEB B. STEWART, A. L. EVANS, HAMPTON D. HAITH, CLIFTON E. PLEASANTS, H. C. PORTER, J. C. SMITH, M. C. BENTON, JR., AND DAVID W. DARR

No. 7021SC327

(Filed 24 June 1970)

1. **Municipal Corporations § 30— zoning — denial of special use permit for mobile home park**

   Municipal Board of Adjustment did not exceed the power delegated to it by a municipal zoning ordinance in denying petitioners' application for a special use permit to construct a mobile home park upon land zoned "Highway Business," notwithstanding the plan for the proposed mobile home park complied with the requirements of the "Table of Conditional Uses Requiring Special Use Permits" set forth in the ordinance.

2. **Municipal Corporations § 30— zoning — special use permit — consideration of "public interest"**

   Provision of a municipal zoning ordinance which requires the Board of Adjustment to consider "the public interest" in acting upon an application for a special use permit is invalid, since it permits the Board to go further than the declared objectives of the ordinance in determining what will adversely affect the public interest.

**3. Municipal Corporations § 30— zoning — denial of special use permit by Board of Adjustment — failure of Planning Board to make specific findings**

    Board of Adjustment's denial of petitioners' application for a special use permit to construct a mobile home park was not invalidated by failure of the City-County Planning Board to make specific findings of compliance or noncompliance with the applicable requirements of the ordinance for issuance of a special use permit in its report recommending denial of the permit.

**4. Municipal Corporations § 30— zoning — special use permit — delegation of administrative power — constitutionality of ordinance**

    Provision of a municipal ordinance giving the municipal Board of Adjustment authority to grant or deny a special use permit based upon its consideration of the information submitted, the findings of the City-County Planning Board, and "the purpose and intent of this ordinance," such declared objectives of the ordinance being set forth therein in detail, *is held* a constitutional delegation of administrative power and not a delegation of legislative power.

APPEAL by petitioners from *Exum, J.,* 5 January 1970 Civil Session, FORSYTH Superior Court.

This is an appeal from a judgment affirming the action of the Winston-Salem Board of Adjustment in denying an application for a special use permit to construct a mobile home park upon a 14.5-acre site owned by petitioner Mamilee Enterprises, Inc. The land is part of a larger tract lying in the vortex of the intersection of Hartford Street and Reynolda Road. The larger tract was zoned B-3 or "Highway Business," however, the 14.5-acre portion is not itself adjacent to Reynolda Road but adjoins Hartford Street, applicant's undeveloped land, and land owned by others which is in the process of being developed as a single-family residential subdivision.

On 20 August 1969 petitioners applied to the Board of Adjustment for a special use permit, as is required in Section 29-7.F of the zoning ordinance. The plans disclose what appears to be a carefully designed mobile home park for 102 units. After due advertisement and notice, a public hearing was held on 4 September 1969.

On 3 September 1969 the director of planning for the Planning Board wrote a letter to the Board of Adjustment stating that the Planning Board had reviewed the petitioners' application and voted to recommend its disapproval. The letter continued: "The Board concluded that Hartford Street could not safely accommodate traffic generated by a mobile home park of the size proposed and that a mobile home park would not be a compatible use of the land in relation to the single-family homes on Hartford Street."

At the public hearing, the petitioners' evidence, together with exhibits, tended to show that the plan for the mobile home park proposed by the petitioners complied with the requirements set out in the "Table of Conditional Uses Requiring Special Use Permits" of Section 29-7.F. The attorney for the petitioners contended that once these conditions are met the Board of Adjustment must approve the special use permit requested. In executive session the Board members considered the portion of Section 29-19.A.2.c.(1) which provides as follows:

> "In acting upon the application for a special use permit the Board of Adjustment shall consider, and base its decision upon, the information submitted, the findings of the City-County Planning Board, the purpose and intent of this ordinance, and the public interest."

As was summarized by the chairman of the Board of Adjustment, "Strenuous opposition to the request had been shown, this consisting of statements under oath by the developer of an adjoining residential subdivision and by a representative of a lending agency, the submission of a petition containing 184 signatures of persons opposing, and statements of several property owners present." After general discussion the Board of Adjustment voted unanimously to deny the special use permit requested.

The cause came on to be heard in the superior court on writ of certiorari as provided by statute. Respondents tendered a motion to dismiss on the ground that the questions raised have been rendered moot by a subsequent ordinance passed by the Board of Aldermen on 3 November 1969 rezoning the part of the property in question from B-3 and R-6 to R-4, a category which does not allow special use permits for the construction of a mobile home park. Motion to dismiss was denied. The court considered the contention, the evidence, the zoning ordinance, and the case of *Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78 (1969).

In view of the *Jackson* decision, the court considered the matter as though the zoning ordinance did not include the words "and the public interest." The court concluded:

> "Disregarding the words 'and the public interest' appearing in * * * Section 29-19.A.2.c.(1), the action of the Board of Adjustment denying petitioners' application is clearly based upon purposes set forth in Section 29-2 of the Zoning Ordinance, such as 'to lessen congestion in the streets,' and 'the preservation of property values.' "

The decision of the Board of Adjustment denying petitioners' application for special use permit was ordered affirmed and petitioners appealed.

*R. Kason Keiger for petitioner appellants.*

*Womble, Carlyle, Sandridge & Rice by William F. Womble and Zeb E. Barnhardt, Jr., for respondent appellees.*

BRITT, J.

**[1, 4]**     Respondents contend that although petitioners may have satisfied the mobile home park requirements set out in the zoning ordinance, Section 29-7.F "Table of Conditional Uses Requiring Special Use Permits," this alone does not entitle petitioners to a special use permit. Petitioners contend that the Board of Adjustment's denial of the permit was an action in excess of its lawful power as an administrative agency of the municipality. The issues before us are: first, whether the Board of Adjustment exceeded the power delegated to it in the municipal ordinance, and, second, whether the power purportedly delegated by the ordinance to the administrative board is a legislative power and therefore constitutionally invalid. It is our opinion that the Board of Adjustment's action is consistent with the authority delegated to it by ordinance, and that the delegation itself is permissible under both the statutory grant of power and the constitutional standard established in *Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78 (1969).

The ordinance provides that certain uses are permitted within a B-3 district as a matter of right upon meeting certain conditions set out in Section 29-7.E, and certain other uses are permitted upon issuance of a special use permit as provided in Section 29-7.F. Motels, hotels, nursery schools, and mobile home parks are among those uses within the purview of Section 29-7.F which establishes the following requirements:

> "The Board of Adjustment may authorize the issuance of a special use permit, as provided in Section 29-19.A.2.c(1), for uses included in the following table, but only in the districts where such uses are permitted, and only after receiving from the City-County Planning Board a report finding that the proposed building or site will comply with all applicable requirements of this ordinance and after public notice and public hearing."

The "Table of Conditional Uses Requiring Special Use Permits"

which is a part of Section 29-7.F establishes detailed site requirements (five paragraphs) and other requirements (four paragraphs). The following procedure is established in Section 29-19.A.2.c.(1):

"(1) *Special Use Permits.* Applications for special use permits may be approved by the Board of Adjustment after such board receives a report thereon from the City-County Planning Board and holds a duly advertised public hearing in each case, provided that the Planning Board shall not be required to review and report on applications for nursery schools, kindergartens, riding stables, shooting ranges, auto hobbyists, or dwellings in other than principal buildings. The Planning Board, in cases requiring its review, shall submit its recommendation in writing to the Zoning Officer not more than 60 days after receipt of a written request from the Zoning Officer for review of the application, unless such period is extended by the City Manager or the Board of Aldermen. *In acting upon an application for a special use permit the Board of Adjustment shall consider, and base its decision upon, the information submitted, the findings of the City-County Planning Board, the purpose and intent of this ordinance, and the public interest.* No provision of this ordinance shall be interpreted as conferring upon the Board of Adjustment the authority to approve· an application for a special use permit for any use except as authorized in Section 29-7.F. and 29-11.B. In approving an application for the issuance of a special use permit the Board of Adjustment may impose additional reasonable and appropriate conditions and safeguards to protect the public health, safety, morals, and general welfare, the value of neighboring properties, and the health and safety of neighboring residents." (Emphasis added.)

The "purpose and intent" clause of the ordinance clearly purports to delegate to the Board of Adjustment the power to consider the "declared objectives" of the ordinance in determining whether to grant a special use permit. The "purpose and intent" or "declared objectives" are set out in Section 29-2:

"This ordinance is adopted for the purpose of promoting the health, safety, morals, and general welfare of the community consisting of all the area within the corporate limits of the City of Winston-Salem and all the area within one mile in all directions beyond the City corporate limits as they now exist and as said City limits shall hereafter be fixed. The community is divided into districts deemed best suited to carry out the pur-

poses of this ordinance, in accordance with a comprehensive plan designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health, safety, and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements; to provide a basis for planning for the sound and harmonious development of the community in the interest of the general welfare and the preservation of property values; and to provide for a fair and proper administration of this ordinance and its orderly amendment.

Toward achieving these objectives, there are hereby established within the districts into which the community is divided, uniform regulations governing the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, land, and water; such regulations being made with reasonable consideration, among other things, as to the character of the districts and their peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land and water throughout the community."

[2] The "public interest" clause purports to delegate the power, as the court said in *Jackson v. Board of Adjustment, supra,* "to go further than the declared objectives of the ordinance in determining what will adversely affect the public interest," and is for that reason constitutionally invalid. The "findings of the City-County Planning Board" clause, as we read it, requires that the Board of Adjustment consider those findings which the Planning Board has made. An application for a mobile home park permit is within those cases which the Planning Board must "review and report on" because mobile home parks are not among those uses expressly excluded.

[3] While Section 29-7.F provides that the Board of Adjustment may issue a special use permit "* * * only after receiving from the City-County Planning Board a report finding that the proposed building or site will comply with all applicable requirements of this ordinance * * *," the ordinance does not prohibit the Planning Board from making findings regarding factors which may be beyond the Section 29-7.F "applicable requirements" but are within the "declared objectives" of the ordinance. Although the Board of Adjustment could not lawfully issue a permit on the basis of the Planning Board's report in this case because there was no finding of

compliance "with all applicable requirements," the failure of the Planning Board to make specific findings of compliance or noncompliance with the detailed requirements set out in the Section 29-7.F table does not invalidate the Board of Adjustment's denial of a permit. There is nothing in the ordinance which indicates that the findings which were made are beyond the intended purview of the Planning Board. Indeed, Section 29-19.A.2.c.(1) characterizes the Planning Board's report as a "recommendation" rather than as a narrowly-defined set of findings.

[4] The power which has been delegated and exercised in the instant case is consistent with the statutory grant in G.S. 160-172 and G.S. 160-178 and the constitutional standard set by *Jackson.* G.S. 160-172 provides that a municipal zoning ordinance may "* * * provide that the board of adjustment or the local legislative body may issue special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein, and may impose reasonable and appropriate conditions and safeguards upon such permits." G.S. 160-178 provides that a board of adjustment "shall also hear and decide all matters referred to it or upon which it is required to pass under any such ordinance."

In the *Jackson* case the court said that a clause purporting to delegate to a board of adjustment the power to determine, and act upon the determination that "the granting of the special exception will not adversely affect the public interest," was constitutionally impermissible because it "was intended to permit the Board of Adjustment to go further than the declared objectives of the ordinance in determining what will adversely affect the 'public interest.'" To permit the board to go further than considering the declared objectives of the ordinance would be to delegate to that board a legislative rather than administrative power. In *Jackson* the ordinance in question also purported to delegate to the Board of Adjustment the power to "* * * grant such permit 'in accordance with the principles, conditions, safeguards and procedures specified in this ordinance,' or * * * to deny the permit 'when not in harmony with the purpose and intent of this ordinance.'" The court upheld this delegation of power as one properly administrative in nature: "* * * Thus far, it is the ordinance, not the Board of Adjustment which determines the circumstances, the existence of which calls into play the provision for the exception, the board having authority to determine only the existence or absence of those circumstances. This determination is a matter of administration, not a delegation

of the legislative power to change or add to the law as fixed in the ordinance."

Petitioners have strenuously contested the soundness of a procedure which would make it easier for them to build an abattoir than a well-planned modern mobile home park, but our duty is to pass upon its legality rather than its wisdom. The Board of Adjustment heard competent evidence and made findings of fact supported by that evidence; the procedure followed was consistent with the ordinance and the ordinance is consistent with applicable statutes and constitutional requirements.

Like the superior court, we have not considered or passed upon respondents' contention that the questions raised by petitioners have been rendered moot by an ordinance enacted by the Winston-Salem Governing Board on 3 November 1969 rezoning the property in question from B-3 and R-6 to R-4. Proper procedures are available to the parties to determine the effect of that ordinance should they desire a determination.

The judgment of the superior court is

Affirmed.

BROCK and HEDRICK, JJ., concur.